DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating a mother's parental rights and awarding permanent custody of three children to a children's services agency. Because we conclude that the trial court's findings are supported by the evidence, we affirm its judgment.
On New Year's Day, 2000, a Lucas County Sheriff's Deputy found ten-year-old Lance H. and his nine-year-old brother, Brittain, wandering the streets of downtown Toledo. The boys told the deputy that they had escaped from their mother's apartment by climbing through a window. The children reported their mother had beaten them, locked them in their room and denied them food for nearly a day. Police went to the mother's apartment where they found appellant, Sharon A., and a third child, five-year-old Jacoabi A.
The children were delivered to appellee, Lucas County Children's Services Bureau ("CSB"). A CSB physical examination of the children revealed injuries consistent with their allegations. Appellant was eventually charged with child endangering. She later was found guilty of that crime.
In the case before us, the trial court awarded temporary custody of the children to appellee, which placed them in foster care. Appellee identified the cause which required the children's removal from the home as appellant's mental illness. In 1992, appellant was diagnosed schizophrenic with paranoia and delusions. In 1997, she was diagnosed as having depression "with psychotic features." Although psychotropic drugs were prescribed at the time, appellant reported that she no longer took any medications and was not under the care of a physician.
Appellant maintained that she no longer had any mental illness and attributed the abuse reported by the children as a product of their "lies." Appellant offered the same explanation as to the reason three other children had been taken away from her in Michigan and Indiana. Indeed, during the course of her contact with CSB and the Lucas County Juvenile Court, appellant accused virtually every person she came into contact with as either being dishonest, deceitful or racist. None of these allegations was substantiated.
Appellee referred appellant to a mental health counselor for a psychological assessment. The counselor concluded that appellant was schizophrenic, paranoid type, and referred her for a psychiatric evaluation. Six months later, appellant took a battery of psychological tests which either produced invalid results or confirmed her prior mental condition. Throughout, appellant insisted that she had no present mental illness and refused to acknowledge any responsibility for the removal of the children from her home. Appellant maintained she was the victim of the lies of others, including television talk show host, Montel Williams.
On December 4, 2000, appellee moved for permanent custody of the children. The matter proceeded to trial, at which appellee presented evidence of appellant's abuse and mental instability. The children's guardian ad litem reported that the children did not wish to be reunited with their mother and recommended that her parental rights be terminated. Appellant testified on her own behalf, again denying any mental illness and accusing others of lying about her.
Following trial, the court found that the children could not and should not now, or in the reasonable future, be reunited with their mother and that it was in their best interest to have appellant's parental rights terminated. The court granted permanent custody to appellee. From this judgment, appellant now brings this appeal, setting forth the following two assignments of error:
 "CSB did not show by clear and convincing evidence that the agency should be awarded permanent custody.
 "The Lucas County Children Services Board did not examine avenues to secure relative placement."
 I.
In her first assignment of error, appellant argues, in essence, that the trial court's decision to award appellee permanent custody of these three children was against the manifest weight of the evidence.
R.C. 2151.414 provides that a parent's rights may not be terminated unless the court finds evidence that 1) the child, "* * * cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents," R.C. 2151.414(B)(1)(a), and 2) that a grant of permanent custody of a child to a children's service agency is in the child's best interests. R.C. 2151.414(B). The statute sets forth a list of sixteen predicate findings, one of which must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent. R.C. 2151.414(E); see Inre William S. (1996), 75 Ohio St.3d 95, syllabus. The statute also enumerates certain criteria for evaluating whether permanent custody with a children's services agency is in the child's best interests. R.C.2151.414(D)(1) through (4).
All of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(B). In re Forest S. (1995),102 Ohio App.3d 338, 345. "Clear and convincing" evidence is evidence sufficient to produce in the mind of the trier of fact "a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
In this case, the trial court found four of the predicate factors applicable to appellant: R.C. 2151.414(E)(1), (2), (3) and (7)(c).
R.C. 2151.414(E) directs that a court shall enter a finding that a child cannot or should not be placed with the child's parent if it finds:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *;
 "(3) The parent committed any abuse as described in section 2151.031 [2151.03.1] of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
"* * *
 "(7) The parent has been convicted of or pleaded guilty to one of the following:
"* * *
 "(c) An offense under division (B)(2) of section 2919.22
of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense[.]"
If any one of these findings is supported by the evidence, we must sustain the trial court's conclusion that these children cannot or should not be reunited with their mother. In re Stacy S. (1999),136 Ohio App.3d 503, 521.
Appellant consented to a finding that these children were abused and neglected at the initial adjudicatory hearing before the trial court and it is undisputed that she was convicted of child endangering as a result of the incident that caused these children to be removed from the home. Notwithstanding her later disavowal of responsibility for the children's injuries, the child endangering conviction alone is sufficient to support an R.C. 2151.414(E)(3) finding. See R.C. 2151.031(B). Accordingly, appellant's first assignment of error is not well-taken.
 II.
In her remaining assignment of error, appellant contends that appellee was "mandated by law" to explore placement of the children with a relative prior to seeking permanent custody. Appellant relies on R.C.2151.412(G) to support this proposition.
We have already considered the "mandatory" nature of R.C. 2151.414(G) and rejected appellant's contention. In re Dixon (Nov. 29, 1991), Lucas App. No. L-91-021, unreported; see, also, In re Hiatt (1993),86 Ohio App.3d 716, 722. Accordingly, appellant's second assignment of error is not well-taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant.
James R. Sherck, J., Richard W. Knepper, J., Mark L. Pietrykowski,P.J., CONCUR.