DECISION AND JUDGMENT ENTRY
{¶ 1} Julie Y., the biological mother of Tiffany Y. and Danielle Y., appeals from a judgment issued by the Sandusky County Common Pleas Court, Juvenile Division, granting permanent custody of her daughters to the Sandusky County Department of Job and Family Services ("SCDJFS"). Because we conclude that the trial court acted properly
after finding by clear and convincing evidence that it was in the best interest of the child to have permanent custody transferred to SCDJFS, we affirm.
 Facts
{¶ 2} In this case, which terminated the parental rights of Julie Y. and Danielle Y., SCDJFS was awarded permanent custody of Tiffany, born in 1991, and Danielle, born in 1996. Complaints were first filed for abuse, neglect, and dependency of the girls in June 2001. In April 2001, there had been an incident with Lawrence that caused Julie to move into a domestic violence shelter with her daughters. Two months later, she moved back with Lawrence even though she was warned that if she took such an action, her girls would be placed in foster care. After a hearing in September 2001, Tiffany was found to be neglected and dependent, and Danielle was found to be abused, neglected, and dependent. Temporary custody was awarded to SCDJFS.
{¶ 3} At the permanent custody hearing held from January 13 through January 17, 2003, over 766 pages of testimony was presented. Counselors, caseworkers, the children's guardian ad litem, and the foster mother testified about the children's condition when they entered foster care. Initially, neither girl, aged ten and five at the time, was properly toilet trained. Danielle, the five-year old, would masturbate frequently in public, saying her father said that touching herself or having someone else touch her in her private areas was OK if he said so. Tiffany reported that her mother would wash her private areas too hard, and her father would strike her and throw her around when she did not complete her
{¶ 4} homework. Tiffany stated that she was physically abused by her parents, and Danielle stated that she had been sexually abused by her father. There were also allegations that both girls were present when their parents were having sex and when they were viewing pornography. Julie either denied or did not believe the statements of her children.
{¶ 5} Since foster care, both girls are now trained in the use of toilet facilities, Danielle has improved by decreasing her overt sexual behavior, and Tiffany has been placed on medication for her learning disability. Their only behavioral relapses occurred after visits with their mother.
{¶ 6} The individual therapists for the natural parents, Julie and Lawrence, testified at the hearing and recommended that neither parent be reunited with the girls. Lawrence still refused to attend any sex offender counseling and continued to deny the allegations made by Danielle. Although Julie attended counseling, she had not remedied the situation that caused the removal of her daughters. The caseworker for SCDJFS stated that "progress has not been significant enough to reduce the risk to the children." Julie's counselor/social worker concurred, stating, "[s]he's come a long way and she has a long way to go." This witness also observed that Julie was not capable of caring for her children at the current time, and the children were much better off and happier with their foster parents. Other professionals agreed.
{¶ 7} After the hearing, the juvenile court awarded permanent custody of Tiffany and Danielle to SCDJFS. This finding was made in compliance with the requirements of R.C. 2151.414 and R.C. 2151.353(A)(4). Julie appeals that judgment.
 Assignments of Error
{¶ 8} "The trial court erred and abused its discretion in granting the motion for permanent custody filed by Sandusky County Job and Family Services, because the evidence presented failed to meet the burden of proof placed on the agency, of clear and convincing evidence that granting the motion was in Tiffany and Danielle Y.'s best interest."
{¶ 9} "The trial court erred and abused its discretion in granting the motion for permanent custody filed by Sandusky County Job and Family Services, because the magistrate in her decision with findings and conclusions of law made erroneous findings of fact evidence which was substantial and relevant, both of which errors prejudicially effected the outcome of the case."
 Abuse of Discretion Standard
{¶ 10} The term "abuse of discretion" connotes more than an error of law or judgment. It implies that the court's attitude is "unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219; See, also, State v. Adams (1980),62 Ohio St.2d 151, 157; Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256. Following this standard, an appellate court has limited review. Without an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for that of the trial court. See Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 Permanent Custody Clear and Convincing Evidence Standard
{¶ 11} The standard for appellate review in a permanent custody case is whether the trial court had clear and convincing evidence to make a permanent custody adjudication. In re Hiatt (1993), 86 Ohio App.3d 716,725. The "clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally utilized in civil cases but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases. State v. Schiebel (1990),55 Ohio St.3d 71, 74. On appeal from an order terminating parental rights, an appellate court will not reverse the trial court's judgment if, upon a review of the record, it determines that the trial court had sufficient evidence to satisfy the clear and convincing standard. In re Wise (1994), 96 Ohio App.3d 619, 626. The appellate court, therefore, will not substitute its own judgment for that of a trial court applying a "clear and convincing evidence" standard where some competent and credible evidence supports the trial court's factual findings. See, C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus; In re Baby Girl Doe, 149 Ohio App.3d 717, 2002-Ohio-4470, at ¶ 89.
{¶ 12} R.C. 2151.414(B)(1) requires that when the juvenile court's findings that the best interests of the child results in the agency being awarded permanent custody, it must be supported by clear and convincing evidence, but that judgment will not be overturned as against the manifest weight of the evidence if the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. See, e.g., In re S. (1995),102 Ohio App.3d 338, 344-345; Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. This standard applies to cases decided under either R.C. 2151.353(A)(4) or R.C. 2151.414(B)(1)(d). In re Baby Girl Doe, 149 Ohio App.3d 717, 2002-Ohio-4470, at ¶ 89; In re Andrew B., 6th Dist. No. L-01-1440, 2002-Ohio-3977 at ¶ 53.
 Permanent Custody Best Interest of the Child Standard
{¶ 13} The legislature has codified the "best interests of the child" standard in order that trial courts throughout this state may consistently seek to achieve just results that will protect Ohio children. See In re Reynolds (Mar. 7, 1986), Lucas App. No. L-85-154. R.C. 2151.414(B)(2) provides that the juvenile court shall grant permanent custody to the agency if the court determines that "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and * * * permanent custody is in the child's best interest." Id. The statute sets forth a list of sixteen predicate findings, one of which must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent. R.C. 2151.414(E); See In re William S. (1996),75 Ohio St.3d 95, syllabus. The statute also enumerates certain criteria for evaluating whether permanent custody with a children's services agency is in the child's best interests. R.C. 2151.414(D). The statute is written broadly to allow a free-ranging inquiry by the juvenile court judge. All relevant best interests factors are to be
{¶ 14} considered to allow the judge to make a fully informed decision before terminating parental rights, privileges and responsibilities. See In re Awkal (1985), 95 Ohio App.3d 309, 316. The custody decision is to be accorded deference also because the juvenile court has the opportunity to view the witnesses and observe their demeanor, gestures and voice inflections — all incapable of being conveyed through a printed record. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80; Miller v. Miller (1988), 37 Ohio St.3d 71,74. A permanent custody order will not be overturned unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See, Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. See, also, In re Marshall (July 12, 1996), Geauga App. No. 95-G-1934; In re Shchigelski (Oct. 20, 2000), Geauga App. No. 99-G-2241.
 Appellant's First Assignment of Error
{¶ 15} In the first assignment of error, Julie argues that the juvenile court abused its discretion when it decided that there was clear and convincing evidence to show that removal of the children was in their best interests. She notes two specific findings the juvenile court made in its judgment entry granting permanent custody to SCDJFS. The first, in paragraph 28, states: "[t]hat Julie * * * has demonstrated a lack of commitment toward the children and an unwillingness to provide an adequate permanent home for the children by failing to maintain stable housing, employment, and failing to pay child support on a regular basis." Although Julie argues in her brief that she is living in a three bedroom apartment, the record reflected that she was attempting to live in an apartment but was not residing there at the time of the hearing. She had lived in a shelter on a number of occasions and testimony showed that the most recent time she was asked to leave because she would not comply with its rules. There was also testimony that she was living in a hotel room with her boyfriend. With respect to her finances, the record showed that Julie has been unable to hold a stable job. At least one dismissal was based on allegations of theft. The record confirms that she has failed to pay child support consistently.
{¶ 16} The second finding, in paragraph 21 of the judgment entry states: "[t]hat Julie * * * and Larry * * * have failed to continuously and repeatedly to substantially remedy the conditions that caused the children to be placed outside the home." The record shows the children were removed from an abusive situation. Julie primarily argues that since she is seeking a divorce from Lawrence, she will not be having sex with him in front of the children. Although that is what is to be hoped, this ignores the greater issue of protection of her children. Her intent to separate herself from the girl's father was belied by notes she passed to her children that they would all be together. She continued to make questionable choices in her relationships. At the time of the hearing, she was sharing a hotel room and dating a former drug addict. Witnesses, who had personal contact with Julie, the children, or both, testified that she could not adequately protect her daughters from harm.
{¶ 17} Julie also argues that the juvenile court ignored R.C.2151.414(D)(1) in its judgment. This argument is erroneous. When the children had visitations with Julie, they reverted to behaviors that were harmful to their continued development. On the other hand, the children are very comfortable, well adjusted with their foster parents, and happy. The juvenile court did not err, therefore, when it decided that permanent custody should be awarded to SCDJFS because it was in the children's best interest.
{¶ 18} Therefore, the juvenile court's decision to award permanent custody to SCDJFS was proper, for testimony showed by clear and convincing evidence that it was in the best interests of the children to have them permanently removed from their natural parents. Appellant's first assignment of error is found not well taken.
 Appellant's Second Assignment of Error
{¶ 19} Julie's second assignment of error takes issue with findings of fact and conclusions of law made by a magistrate — as it related to permanent custody. However, the record does not contain any permanent custody document prepared by a magistrate. All decisions relating to permanent custody were made by a juvenile court judge, including the final judgment entry awarding permanent custody to SCDJFS. Therefore, Julie's argument is not supported by the facts of this case and is without merit. Appellant's second assignment of error is found not well taken.
{¶ 20} On consideration whereof, we find that substantial justice was done to the party complaining and affirm the judgment of the Sandusky County Court of Common Pleas, Juvenile Division. Appellant is ordered to pay the court costs of this appeal.
 JUDGMENT AFFIRMED.