DECISION AND JUDGMENT
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Juvenile Division, which terminated appellant's parental rights. Because we conclude that the trial court did not err in its determinations, we affirm.
 {¶ 2} In 2007, S. P., a minor, was in the custody of Lucas County Children's Services ("LCCS"). After being found to be a dependent and neglected child in February 2007, S. P.'s legal custody was awarded to T. L. While in the legal custody of T. L., *Page 2 
13 year-old S. P. ("mother") gave birth to S. B., the subject of this appeal. Appellant, eighteen year-old Q. B., is the father of S. B. After S. B.'s birth, T. L. contacted LCCS indicating that she did not want custody of mother anymore because of her unruly behavior. On August 27, 2007, LCCS filed a complaint in dependency and took temporary custody of S. B. The complaint alleged that mother had been leaving T. L.'s home for weeks at a time and that S. B., an infant, had recently been hospitalized for an infection.
 {¶ 3} Case plans for mother and appellant father were implemented with the goal of reunification with their child. The case plan formulated for mother required her to obtain a diagnostic assessment and complete a domestic violence education class. Appellant was required to obtain a diagnostic assessment, pay child support and to visit his child on a regular basis.
 {¶ 4} On June 11, 2008, LCCS filed a motion asking the court to terminate the parental rights of mother and appellant father and to award permanent custody of S. B. to the agency. On December 5, 2008, the court granted LCCS's motion. Appellant now appeals setting forth the following assignments of error:
 {¶ 5} "I. The trial court erred in finding that appellee Lucas County Children Services Board had made a reasonable effort to unify the minor child with the appellant.
 {¶ 6} "II. The trial court erred in granting appellee Lucas County Children Services Board's motion for permanent custody as the decision was against the manifest weight of the evidence." *Page 3 
 {¶ 7} There are two avenues by which an agency can obtain permanent custody of a child: (1) by requesting it in the abuse, neglect or dependency complaint under R.C. 2151.353 or (2) by filing a motion under R.C. 2151.413 after obtaining temporary custody. When a child services agency files a complaint for permanent custody pursuant to R.C. 2151.353, unless covered by the exceptions under R.C. 2151.419(A)(2), the trial court must determine whether the agency made reasonable efforts to prevent the continued removal of the children from the home before granting permanent custody to the agency. See R.C. 2151.419(A)(1); In re Wright, 4th Dist. No. 01 CA2627. A trial court's reasonable efforts finding must be supported by clear and convincing evidence. R.C. 2151.414(B).
 {¶ 8} In a reasonable efforts determination, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In re Myers, 4th Dist. No. 02CA50, 2003-Ohio-2776, ¶ 18. A "reasonable effort" is "an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." In re Weaver (1992), 79 Ohio App.3d 59,63.
 {¶ 9} In this case, appellant waited until 14 months after his child was in the agency's custody before obtaining a diagnostic assessment pursuant to his case plan. Caseworker Laurie Wolfe testified that appellant missed several appointments for an assessment before finally obtaining an appointment two weeks before the beginning of the permanent custody trial. Wolfe testified that she advised appellant "several times in *Page 4 
court face to face or phone calls, once in front of his attorney" on how and where to obtain his assessment. Recognizing that appellant has been determined to be intellectually low functioning, Wolfe testified that she made an effort to explain the assessment process in a way that would be easily understandable to him.
 {¶ 10} Appellant's case plan required him to undergo substance abuse and mental health counseling. In addition, he was referred to sexual perpetrator counseling and parental skills education. Appellant failed to comply with his case plan in obtaining any of the recommended services. The trial court stated:
 {¶ 11} "[Appellant's] delayed effort at being assessed prevented him from commencing any case plan services and possibly remedying the problems which prevented him from parenting his child."
 {¶ 12} Consequently, there was clear and convincing evidence presented supporting the trial court's finding that appellee's planning was reasonable and its efforts diligent. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 13} In his second assignment of error, appellant contends that the trial court's decision terminating his parental rights was against the manifest weight of the evidence.
 {¶ 14} A court's decision to terminate parental rights will not be reversed as being against the manifest weight of the evidence as long as the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.In re S. (1995), 102 Ohio App.3d 338, 345; Cross v. Ledford (1954), 161 Ohio St. 469, *Page 5 
paragraph three of the syllabus; see, also, In the matter of: AmberM., 6th Dist. No. WM-05-003, 2005-Ohio-4172, ¶ 59.
 {¶ 15} Issues involving the weight of the evidence and the credibility of witnesses are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id., at 80.
 {¶ 16} R.C. 2151.353 controls the disposition of a child determined to be dependent, neglected or abused. Pursuant to that statute, a court may enter any order of disposition provided for in R.C. 2151.353(A), including an order committing the child to the permanent custody of a public children services agency. But before the court can grant permanent custody of a child to a public services agency the court must determine: (1) that the child cannot be placed with one of his parents within a reasonable time or should not be placed with a parent, pursuant to R.C. 2151.414(E); and (2) that the permanent commitment is in the best interest of the child, pursuant to R.C. 2151.414(D). R.C. 2151.353(A)(4); see, also, In the Matter of Carlos R. III, 6th Dist. No. L-07-1194, 2007-Ohio-6358, ¶ 21.
 {¶ 17} R.C. 2151.414(E) provides that a court, in determining whether a child cannot be placed with a parent within a reasonable time or should not be placed with a parent, shall consider all relevant evidence. R.C. 2151.414(E) additionally provides that *Page 6 
if the court determines by clear and convincing evidence that any one of 16 factors listed in the statute exist, the court must find that the child cannot be placed with the parent within a reasonable time or should not be placed with the parent. Id. Those factors include:
 {¶ 18} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 19} "* * *
 {¶ 20} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 21} "* * *
 {¶ 22} "(16) Any other factor the court considers relevant." R.C. 2151.414(E). *Page 7 
 {¶ 23} Clear and convincing evidence is that evidence which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proven. Cross v. Ledford, supra.
 {¶ 24} With respect to determining the best interest of the child, R.C. 2151.414(D) directs that the court shall consider all relevant factors, including:
 {¶ 25} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 26} "* * *
 {¶ 27} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 28} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 29} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 30} The record shows that neither parent in this case followed through with their case plans. The evidence shows that appellant is intellectually low functioning, that he suffers from bipolar disorder and that he is drug dependant. The court found that these *Page 8 
impairments made the likelihood of him parenting successfully doubtful even if he had followed through with his case plan. Three months after S. B.'s birth, he fathered another child with another minor girl. Mother is a chronic runaway who has had only sporadic contact with her child.
 {¶ 31} Both Wolfe and the guardian ad litem recommended that adoptive placement of S. B. would positively benefit her. The record shows that the child has been in her current foster home since shortly after her birth. The family is interested in adopting her. She is well bonded and integrated into the family.
 {¶ 32} Upon a thorough review of the record in this case, we conclude that the trial court's determinations that S. B. could not be placed with appellant within a reasonable time and should not be placed with him, and that permanent custody was in S. B.'s best interests was supported by clear and convincing evidence. Appellant's second assignment of error is found not well-taken.
 {¶ 33} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24.
JUDGMENT AFFIRMED. *Page 9 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, J., Arlene Singer, J., concur. *Page 1