[Cite as *A.B. v. R.W.*, 2019-Ohio-654.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

A.B.                                                            Court of Appeals No. F-18-005

      Appellee                                               Trial Court No. 2103024

v.

R.W.                                                           **DECISION AND JUDGMENT**

      Appellant                                              Decided: February 22, 2019

* * * * *

Chelsea L. Meister, for appellee.

Robert P. Soto, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant-mother, R.W., appeals the April 16, 2018 judgment of the Fulton County Court of Common Pleas, Juvenile Division, which designated appellee-father, A.B., the residential parent and legal custodian of the parties' three eldest children. Appellant was designated the residential parent and legal custodian of their youngest child. Because we find that the court did not abuse its discretion, we affirm.

{¶ 2} Appellant and appellee have four minor children born in 2006, 2008, 2010, and 2014; the parties were never married.  The parties had no court order regarding parenting time and visitation but appellee was subject to a child support order.  On September 18, 2017, appellee filed a motion for parentage, allocation of parental rights and responsibilities and parenting time.  Appellee requested that the court order genetic testing to confirm he is the father of all four children and that, if so, he be designated custodial and legal parent of said children.  Appellee also requested an emergency custody hearing claiming that the children were in imminent danger by residing with appellant.

{¶ 3} A hearing was held on September 25, 2017, and per agreement of the parties, the court ordered that temporary custody remain with appellant and that appellee have parenting time pursuant to the standard juvenile court schedule.  A home study of the residences was also ordered.  The study was completed and filed with the court on December 12, 2017.

{¶ 4} The matter proceeded to a final hearing on April 4, 2018.  Seven witnesses testified including appellant, appellee, appellant's father with whom she lived, appellee's wife and the children's stepmother, the Defiance Pauling County Consolidated Job and Family Services' employee who conducted the home study, preschool/Head Start teacher of the parties' youngest child, C.W., and the principal of the school where the three eldest children attended.  In line with the testimony presented, multiple exhibits relating to

2.

school attendance, grades, and the health, safety and hygiene of the children were admitted into evidence.

{¶ 5} At the conclusion of the testimony, the trial court ordered that appellant be designated as residential parent and legal custodian of C.W., and that appellee be designated as residential parent and legal custodian of the three older children. The court stated that it entered a "split" decision based on the youngest child's age, the fact that appellant's house was "crowded" with all the children, and the hope that the older children's grades and school experience would improve by living at appellee's house. This appeal followed with appellant raising one assignment of error for our review:

The trial court's decision was against the manifest weight of the evidence.

{¶ 6} In determining the allocation of parental rights and responsibilities for the care of minor children, the trial court is vested with broad discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Absent an abuse of that discretion, a trial court's decision regarding these issues will be upheld. *Masters v. Masters*, 69 Ohio St.3d 83, 85, 630 N.E.2d 665 (1994). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 7} In general, in an initial custody determination a natural father of a child born out of wedlock has equal standing with the mother to assert custody rights. *In re Nentwick*, 7th Dist. No. 00 CO 50, 2002-Ohio-1560, ¶ 33, citing *In re Byrd*, 66 Ohio

3.

St.2d 334, 421 N.E.2d 1284 (1981), paragraph one of syllabus. "In such case, the court shall determine which parent shall have the legal custody of the child, taking into account what would be in the best interests of the child." *Byrd* at paragraph two of the syllabus.

{¶ 8} In determining the best interest of a child in an original decree allocating parental rights and responsibilities for the care of a child, R.C. 3109.04(F)(1) provides that the court shall consider all relevant factors, including, but not limited to:

> (a) The wishes of the child's parents regarding the child's care;
>
> * * *
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> * * *
>
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
>
> (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal

4.

offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; * * *.

**{¶ 9}** At the conclusion of the April 4, 2018 hearing, the trial court issued its R.C. 3109.04(F)(1) findings relying on the above-quoted factors as follows. The court noted that under factor (a), appellee wanted the children in his custody while appellant wanted the children to remain with her but was agreeable to an every-other-week schedule. As to factor (c), the court noted that the children were bonded to both parents and each other. The court noted that there was testimony that appellant's parenting style "need[ed] work" and that the children appear to get along well with the stepmother and her two children. Under factor (d), the court noted that although the children were adjusted to both homes, there was evidence of fleas, inappropriate clothing, hygiene issues, and school attendance problems while the children were at appellant's home. Examining factor (e), the mental and physical health of all persons, the court noted that burns involving one of the children occurred when appellant was not present and she left him in the care of an individual whom the court felt may have not been a proper supervisor. The court further noted that the three older children have various learning and developmental delays and depression. The court noted that a parent should be able to help with the issues. Under factor (g), the court found that appellee was in arrearages in the amount of $477, less than one month, and this should not be given any weight. Factor (h), criminal offenses or domestic violence involving a minor, the court stated that appellant was charged with assault on a minor, which was reduced to disorderly conduct and furnishing alcohol to a minor.

**{¶ 10}** The court then concluded that as to the oldest boys, it was in their best interests to be in the custody of appellee due to their school attendance problems and

6.

hygiene issues. As to the youngest child, the court determined that because she was "clingy" with appellant and not school-age, she could remain with appellant.

{¶ 11} In her sole assignment of error, appellant argues that while the trial court did consider the relevant factors, the court gave improper weight to several of them. Appellant first notes that very little evidence was presented regarding the stepmother and her relationship with the children. Reviewing the testimony presented at the hearing, we note that the stepmother testified as to her relationship with the children and the home-study report also discusses their relationship.

{¶ 12} Next, appellant argues that the court's concerns regarding her home were not supported by the record. Appellant notes that both the investigator's testimony and report were mischaracterized and that other than some loose floor boards on the porch, no safety issues were noted. In making the relevant findings, the court did not state that the home was unsafe, the court indicated that there had been fleas in the home. Further, the home-study report stated that the home had a "strong animal smell, including a urine odor in the home, though no feces or urine was visible during the time of the visit." The investigator's report further provided that there were piles of clothing all over the house, pet food and water bowls, garbage, broken dresser drawers and holes and gouges in the floors and walls. The investigator further reported that appellee's home was clean and free of clutter and hazards.

{¶ 13} Appellant correctly notes that the Head Start teacher who had visited the home twice testified that she observed no dangers or hazards in the home that would

7.

place the child in "imminent danger" and that she indicated that the condition of the home was "typical" compared with other client's homes she had been in. However, the teacher also testified that she did not like to make "judgment calls" about housekeeping and that she is generally invited into only one room of the house.

{¶ 14} Next, as to factor (e), appellant disputes the court's statement that maternal grandfather was not a "proper supervisor" while only observing him for a short period. Appellant further contends that the court improperly placed blame, despite stating otherwise, of the older children's delays on her. We note that the trial court, unlike this court, was able to observe the grandfather and assess his demeanor. *See In re S.B.*, 6th Dist. Lucas No. L-08-1453, 2009-Ohio-2290, ¶ 15, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Further, the fact that appellant lives with him makes such observation relevant.

{¶ 15} As to the children's delays, examined under factor (f), the court suggested that a parent could be helping with the issues; thus, implicitly suggesting that appellant had not been helping. We cannot say that this was error. The testimony and evidence at trial showed that the children were routinely absent or late for school, they were not clean and had to bathe at school, and wore inappropriate clothing. There was also testimony that they were not always served proper meals. These factors could all negatively impact their school performance and mental health.

{¶ 16} Under factor (h), appellant contends that the court should not have considered appellant's furnishing alcohol to minors offense as it did not met the

8.

definition of a "relevant charge" under the subsection. We note that whether or not the offense falls squarely under the wording of the section is not critical to the court's ability to consider it. Certainly the fact that appellant provided alcohol to a minor is relevant to her ability to care for her own four minor children.

{¶ 17} Finally, appellant believes that her contacts with children's services were judged more harshly than appellee's as well as her criminal history. While not noted by the court, the record does contain evidence that appellee had a domestic violence and disorderly conduct charge. As to children services, there were significantly more contacts noted with appellant.

{¶ 18} Reviewing the arguments of appellant and the record below, we cannot say that the trial court's custody determination was against the weight of the evidence. Thus, the trial court did not abuse its discretion in designating appellee the residential parent and custodian of the parties' eldest three children. Appellant's assignment of error is not well-taken.

{¶ 19} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Fulton County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

9.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

                            _____
                                         JUDGE

Arlene Singer, J.

Christine E. Mayle, P.J.
CONCUR.

                            _____
                                       JUDGE

                            _____
                                       JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.